UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, *et al.* | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:12-CV-184 JD ) |
| LAKE ERIE LAND COMPANY, *et al.* | ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This is an insurance coverage dispute between the insurers Auto-Owners Insurance Company ("Auto-Owners") and Property-Owners Insurance Company ("Property Owners," collectively the "Insurers") and the insured Lake Erie Land Company ("LEL"). Now pending before the Court are cross-motions for summary judgment on one aspect of that dispute: whether the insurance policies at issue cover an award of punitive damages incurred by LEL in a lawsuit between LEL and B&B LLC (the "B&B Lawsuit").[1] [DE 71, 87.]

Deciding the cross-motions requires the Court to (1) analyze the insurance policies at issue, (2) consider whether the actions of the Insurers in the underlying litigation justify the application of estoppel, and (3) apply Indiana's public policy regarding the insurability of punitive damages. The parties disagree at each step of the analysis. The Insurers argue that the terms of the policies do not provide coverage for an award of punitive damages; LEL disagrees and also argues, in the alternative, that the Insurers are estopped from denying coverage based on the Insurers' actions during the initial B&B Lawsuit. If the Court agrees with LEL on either contention, the end result would be that the Insurers are responsible for covering the punitive

---
[1] Also pending is a motion for oral argument on the cross-motions. [DE 111.]

damages award at issue, unless the Court determines that Indiana's public policy prohibits the insurability of the type of punitive damages awarded in the B&B Lawsuit. With respect to that question, the Insurers argue that Indiana's public policy prohibits the insurability of a punitive damages award, unless the punitive damages were assessed on a theory of vicarious liability. [DE 85 at 5–17; DE 108 at 9–12.] LEL argues that Indiana's public policy only prohibits punitive damages that result for "malicious or oppressive conduct." [DE 72 at 14–16; DE 105 at 11–15.]

While the Court has not yet made any final determination as to the policy construction or estoppel arguments, the Court currently believes that it is likely that it will need to consider the insurability of the punitive damages award as a matter of Indiana's public policy. However, that task is complicated by at least two layers of uncertainty. First, the nature of the punitive damages award in the B&B Lawsuit is unclear. Second, Indiana law regarding the insurability of punitive damages as a matter of public policy in this particular context is also unclear.

With respect to the nature of the punitive damages award, the jury in the second trial during the B&B Lawsuit considered three claims, as well as a general claim for punitive damages. The jury returned a verdict in favor of LEL on the claim for trespass, returned a verdict in favor of B&B on the claim for nuisance (but awarded no damages), and returned a verdict in favor of B&B on the claim for negligence (and awarded damages in the amount of $1,760,269.00). [DE 86-8.] The jury also returned a verdict awarding B&B $1,460,044.50 in punitive damages. [*Id.*] When instructed on the topic of punitive damages, the jury was instructed that it could award punitive damages if B&B proved by clear and convincing evidence that LEL "acted with willful and wanton misconduct, maliciously, fraudulently, oppressively, or with gross negligence." [DE 86-9 at 20.]

The Insurers attempt to portray this award as establishing that LEL (as a corporate entity) "exhibited willful and wanton misconduct, which justified punitive damages." [DE 85 at 12.] LEL attempts to portray the award as most likely awarded because of non-intentional conduct of LEL. [DE 105 at 15.] While the Court doubts that the award can be fairly characterized as one based on a theory of vicarious liability (since the jury does not appear to have been instructed on a theory of vicarious liability), the Court believes both parties overstate the clarity with which the theory under which the jury awarded punitive damages can be determined. However, at the very least, it appears to the Court that the jury's award could be consistent with the jury having found LEL to be grossly negligent.

With respect to Indiana's public policy on the insurability of punitive damages, clarity is equally lacking. When exercising its diversity jurisdiction, this Court must apply the law of Indiana as it predicts the law would be applied by the Indiana Supreme Court. *BMD Contractors, Inc. v Fid. & Deposit Co. of Md.*, 679 F.3d 643, 648 (7th Cir. 2012). If the Indiana Supreme Court has not spoken on the particular issue, then decisions of the intermediate appellate court will control "unless there are persuasive indications that the state supreme court would decide the issue differently." *Id.* If there are no directly applicable state decisions at all, then the Court "may consult 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data' that might be persuasive on the question of how the Indiana Supreme Court would likely rule." *Id.* (quoting *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 635 (7th Cir. 2007)).

The parties have cited no cases in which the Indiana Supreme Court has spoken on Indiana's public policy regarding the insurability of punitive damages in any context, let alone the context of an award of punitive damages based on gross negligence. The Court has

conducted its own independent research and found no such cases. Instead, the primary cases on which the parties rely are cases in which federal courts have attempted to predict how the Indiana Supreme Court would interpret Indiana's public policy with respect to the insurability of punitive damages.

In *Norfolk and Western Railway Company v. Hartford Accident and Indemnity Company*, then-Chief Judge Eschbach of the Northern District of Indiana considered the issue of Indiana's public policy regarding the insurability of punitive damages and predicted that the Indiana Supreme Court would prohibit the insurability of punitive damages in cases where "the law imposes punitive damages upon an insured in order to shape or deter the insured's conduct." 420 F. Supp. 92, 95 (N.D. Ind. 1976). The court also predicted an exception to that general rule, where an employer is held liable for a punitive damage award on the basis of vicarious liability. *Id.* The court summarized:

> There is, accordingly, a distinction to be made in Indiana law between liability for punitive damages directly imposed and such liability when vicariously imposed. . . . In the former case, it would contravene public policy to allow the corporation to shift to an insurer the deterrent award imposed on account of the corporation's own wrongful acts; in the latter case, it would not be inconsistent with public policy to allow the corporation to shift to an insurer the punitive damage award when that award is placed upon the corporation solely as a matter of vicarious liability.

*Id.* at 96–97.

That decision has been cited with approval by several other courts, including the Northern District of Indiana, *Grant v. N. River Ins. Co*, 453 F. Supp. 1361, 1370–71 (N.D. Ind. 1978) (holding insurance coverage was provided for punitive damages awarded on theory of vicarious liability, but not those directly imposed on an insured); the Southern District of Indiana, *Exec. Builders, Inc. v. Motorists Ins. Cos.*, No. IP 00-0018-C-T/G, 2001 WL 548391, at *4–6 (S.D. Ind. Mar. 30, 2001) (holding punitive damages award assessed directly against a

4

corporation not insurable under Indiana's public policy) and *Hartford Fire Ins. Co. v. Guide Corp.*, No. IP 01-572-C-Y/F, 2005 WL 5899840, at *5–6 (S.D. Ind. Feb. 14, 2005) (holding criminal asset forfeiture not insurable under Indiana's public policy); and the Seventh Circuit, *Commercial Union Ins. Co. v. Ramada Hotel Operating Co.*, 852 F.2d 298, 305 (7th Cir. 1988) (reversing award of summary judgment where theory on which state court jury awarded punitive damages was unclear).

Most notably, the Indiana Court of Appeals has adopted the reasoning of *Norfolk* in assessing the insurability of an award of punitive damages against a corporation. *Stevenson v. Hamilton Mutual Ins. Co.*, 672 N.E.2d 467, 474–75 (Ind. Ct. App. 1997). In *Stevenson*, the Court of Appeals affirmed the trial court's grant of summary judgment where "the sole shareholder/director involved in the management and operation of [the corporation] . . . herself perpetrated the willful, and malicious acts through her operation of [the corporation] which have resulted in the punitive damages award." *Id.* at 475. While the decision in *Stevenson* would be controlling absent persuasive indications that the Indiana Supreme Court would decide the issue differently, the Court does not find *Stevenson* to be fully on point with this case. Notably, where *Stevenson* spoke of the corporation's actions as "willful" and "malicious," the jury's award of punitive damages in the B&B Lawsuit is equally consistent with a finding that LEL acted with gross negligence.

On the question of the insurability of a punitive damages award assessed directly against a corporation on the theory of gross negligence, the parties have cited no cases applying Indiana law. The Court, through independent research, has also not located any such cases. However, many states do distinguish, as a matter of public policy, the insurability of punitive damages awarded on a theory of intentional action versus punitive damages awarded on a theory of gross

negligence. *See, e.g., S. Farm Bureau Cas. Ins. Co. v. Daniel*, 440 S.W.2d 582, 584 (Ark. 1969) ("Neither can we find anything in the state's public policy that prevents an insurer from indemnifying its insured against punitive damages arising out of an accident, as distinguished from intentional torts."); *Hartford Life Ins. Co. v. Title Guar. Co.*, 520 F.2d 1170, 1175 (D.C. Cir. 1975) (applying District of Columbia law; "It is only for the knowledgeable and intentional wrongdoer that the practice of voiding insurance contracts as being contrary to public policy is reserved."); *Cont'l Ins. Cos. v. Hancock*, 507 S.W.2d 146, 152 (Ky. Ct. App. 1974) ("Even though punitive damages are allowed solely as punishment and as a deterrent, we do not deem it against public policy to allow liability therefor to be insured against when the punitive damages are imposed for a grossly negligent act of the insured rather than an intentional wrong of the insured."); *Mazza v. Med. Mut. Ins. Co. of N.C.*, 319 S.E.2d 217, 219 (N.C. 1984) ("Many courts have allowed recovery of punitive damages for willful and wanton negligence because there existed a distinction between negligence and intentional torts."); *Harrell v. Travelers Indem. Co.*, 567 P.2d 1013, 1021 (Or. 1977) ("But as long as insurance companies are willing, for a price, to contract for insurance to provide protection against liability for punitive damages to persons or corporations deemed by them to be 'good risks' for such coverage, and as long as liability for punitive damages continues to be extended to 'gross negligence,' 'recklessness,' and for other conduct, 'contrary to societal interests,' we are in agreement with those authorities which hold that insurance contracts providing protection against such liability should not be held by courts to be void as against public policy."); *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 670 (Tex. 2000) ("In response to the certified question, we answer that the public policy of Texas does not prohibit insurance coverage of exemplary damages for gross negligence in the workers' compensation context.").

As far as the Court can tell, no court applying Indiana law has ever addressed the particular distinction between Indiana's public policy regarding the insurability of punitive damages awarded directly against a corporation on a theory of intentional action versus on the theory of gross negligence.[2]  Additionally, as noted above, the vast majority of the cases interpreting Indiana's public policy on the insurability of punitive damages have come from federal courts predicting how the Indiana Supreme Court would rule on the issue if given the opportunity.

Given the lack of certainty in this area and the public importance of the question, the Court believes this question may be appropriate for certification to the Indiana Supreme Court. Rule 64 of the Indiana Rules of Appellate Procedure states, in part:

> The United States Supreme Court, any federal circuit court of appeals, or any federal district court may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent.

Ind. R. App. P. 64(a).

Accordingly, for the reasons stated above, the parties are ordered to file supplemental briefing in support of their cross-motions for summary judgment.  [DE 71, 87.]  The supplemental briefing should cover, at a minimum: (1) any supplemental authority to assist the Court in predicting how the Indiana Supreme Court would determine whether Indiana's public policy prohibits the insurability of an award of punitive damages assessed directly against a corporation on a theory of gross negligence and (2) the parties' position as to whether the question should be certified to the Indiana Supreme Court.  Both parties shall file their initial

---

[2] In its reply brief, LEL cites cases purporting to show that Indiana courts recognize a distinction between intentional wrongdoing and gross negligence in an insurance context.  [DE 105 at 12.]  However, these cases differentiate between intentional and negligent acts for the purposes of determining coverage under policy terms, and thus provide little assistance in identifying Indiana's public policy with respect to the insurability of punitive damages.

7

brief no later than June 5, 2014 and may file a response to the opposing party's brief no later than June 20, 2014.

SO ORDERED.

ENTERED:  May 6, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court